1  KNOX, LEMMON & ANAPOLSKY, LLP
   JOHN M. LEMMON (SBN 088961)
2  STEPHEN J. BYERS (SBN 245607)
   300 Capitol Mall, Suite 1125
3  Sacramento, CA 95814
   Telephone:  (916) 498-9911
4  Facsimile:  (916) 498-9991

5  Attorneys for Plaintiff CALIFORNIA MILK
   PROCESSOR BOARD, an instrumentality of the State
6  of California

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  CALIFORNIA MILK PROCESSOR          CASE NO.
    BOARD, an instrumentality of the State of
12  California,                         COMPLAINT

13          Plaintiff,                  1. **Trademark/Service Mark Infringement;**
                                        2. **Trademark Service Mark Infringement;**
14  v.                                  3. **Trademark/Service Mark Infringement;**
                                        4. **Unfair Competition;**
15  BRIDGE BRANDS, a California corporation;  5. **False Designation of Origin;**
    and MICHAEL R. LITTON, an individual,    6. **Trademark/Service Mark Dilution;**
16                                      7. **Counterfeiting;**
            Defendants.                 8. **Breach of Implied License Agreement;**
17                                      9. **Breach of Settlement Agreement; and**
                                        10. **Fraud**
18

19

20                                      **AND DEMAND FOR JURY TRIAL**

21

22          Plaintiff, the California Milk Processor Board, an instrumentality existing under the laws of the

23  State of California and the regulations promulgated by the California Department of Food and

24  Agriculture ("Plaintiff"), for its claims for relief, alleges as follows:

25                          <u>**JURISDICTION AND VENUE**</u>

26          1.      This Court has original subject matter jurisdiction over the present action pursuant to 15

27  U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

28

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

                                        1
                                   **COMPLAINT**

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

2.    This Court has original subject matter jurisdiction over the unfair competition claim stated herein under the provisions of 28 U.S.C. § 1338(b) in that said claim is joined with a substantial and related claim under the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq.*

3.    This Court has supplemental jurisdiction over the breach of implied license agreement, breach of settlement agreement and fraud claims stated herein under the provisions of 28 U.S.C. § 1367 in that said claims are so related to the claims in this action that are within this Court's original subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.    Defendants' unlawful acts against Plaintiff have been committed in the State of California and in interstate commerce.  Defendants have, without authorization, used Plaintiff's "got milk?" trademarks and service marks (collectively, "the 'got milk?' marks") in California and in interstate commerce by infringing, counterfeiting and diluting the "got milk?" marks and by holding themselves out to third parties as having the authority to grant licenses and/or sub-licenses to use the "got milk?" marks, thus creating a likelihood of confusion, deception and mistake.  Defendants are subject to California jurisdiction pursuant to California Code of Civil Procedure section 410.10.

5.    Venue is proper in the Eastern District of California because Plaintiff and Defendant BRIDGE BRANDS agreed to a forum selection clause in a License Agreement relating to BRIDGE BRANDS' use of the "got milk?" marks.  Pursuant to Ninth Circuit case law, Defendant MICHAEL R. LITTON's conduct is so closely related to that License Agreement that the forum selection clause applies to LITTON as well.

## GENERAL ALLEGATIONS

6.    The California Milk Processor Board was created in 1993 to market and promote the consumption of fluid milk in the State of California.  The California Milk Processor Board created the well-known "got milk?" advertising campaign and is the registered owner of the "got milk?" trademark

1   and service mark registrations.  Plaintiff also owns a number of "got milk" domain names including,

2   but not limited to, gotmilk.com, gotmilk.net, gotmilk.org, etc.

3           7.      Plaintiff is informed and believes, and based thereon alleges, that Defendant BRIDGE

4   BRANDS ("BRIDGE"), is, and at all times relevant herein was, a domestic corporation registered with

5   the State of California with a principal place of business in San Francisco County, California.  BRIDGE

6   does business under the fictitious business name "San Francisco Chocolate Factory."   BRIDGE

7   engages in the marketing, solicitation and sale of chocolate products in interstate commerce, including

8   

9   in the State of California, at a retail store located in San Francisco, California, by means of a website at

10  bridgebrandschocolate.com, and by attendance at nationwide food shows.

11          8.      Plaintiff is informed and believes, and based thereon alleges, that Defendant MICHAEL

12  R. LITTON ("LITTON"), is, and at all times relevant herein was, an individual residing in the State of

13  California.  Plaintiff is informed and believes, and based thereon alleges, that LITTON is the owner,

14  president, manager, or holder of any other type of controlling interest in Defendant BRIDGE.

15  

16                    **GOT MILK? SERVICE MARKS & TRADEMARKS**

17          9.      Plaintiff regularly launches new and innovative advertising campaigns designed to

18  promote the purchase and consumption of fluid milk in the State of California.  Plaintiff's most

19  successful program to date is the widely recognized "got milk?" campaign which was so popular and

20  effective that it was quickly licensed to numerous manufacturers and marketers throughout the United

21  States.  Plaintiff also licenses the "got milk?" marks to third parties on an international basis.

22  

23          10.     In conjunction with print and television advertising, Plaintiff's efforts also extend to

24  maintaining internet websites devoted to marketing campaigns and the licensing of producers and

25  sellers of products that bear the "got milk?" marks throughout the United States.

26          11.     On October 29, 1993, Plaintiff filed an application to register "GOT MILK?" as a

27  service mark with the United States Patent and Trademark Office ("USPTO").

28  

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

12.     On or about November 15, 1993, Plaintiff first began using the "GOT MILK?" service mark in interstate commerce.

13.     On July 4, 1995, the USPTO registered Plaintiff's "GOT MILK?" service mark on the Principal Register covering the use of said mark for "association services provided to fluid milk producers in the State of California; namely, the advertising and promotion of the sale and use of fluid milk." (Reg. No. 1,903,870). A true and correct copy of the registration certificate is attached hereto as **Exhibit A** and incorporated herein by this reference.

14.     The "GOT MILK?" service mark registration is in full force and effect and is currently owned by Plaintiff. Plaintiff has given notice that "GOT MILK?" is registered with the USPTO by using the registration symbol ® in association with its "GOT MILK?" service mark.

15.     Plaintiff has filed with the USPTO an affidavit of use of the "GOT MILK?" service mark as required by 15 U.S.C. § 1058(a).

16.     The validity of the registered "GOT MILK?" service mark and of the registration of that service mark, Plaintiff's ownership of the mark, and Plaintiff's exclusive right to use said registered service mark in commerce for the above-mentioned services are incontestable under 15 U.S.C. §§ 1065 and 1115(b), because Plaintiff has filed the required affidavit with the USPTO.

17.     On December 18, 2008, Plaintiff filed an application to register "got milk?" as a trademark with the USPTO.

18.     On or about December 6, 2002, Plaintiff first began using the "got milk?" trademark in interstate commerce for "chocolate, chocolate candies, chocolate syrup and chocolate powder."

19.     On December 29, 2009, the USPTO registered Plaintiff's "got milk?" trademark on the Principal Register covering the use of said mark for numerous goods including, but not limited to "chocolate, chocolate candies, chocolate syrup and chocolate powder." (Reg. No. 3,730,703). A true and correct copy of the registration certificate is attached hereto as **Exhibit B** and incorporated herein

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

1  by this reference.

2      20.    The "got milk?" trademark registration is in full force and effect and is currently owned

3  by Plaintiff.  Plaintiff has given notice that "got milk?" is registered with the USPTO by using the

4  registration symbol ® in association with its "got milk?" trademark.

5      21.    Plaintiff is also the current owner of the following "got milk?" service marks and

6  trademarks registered with the USPTO:  Reg. Nos. 2,689,741; 3,798,763; 3,907,296; 4,040,794;

7  4,040,795; and 4,079,538.  True and correct copies of the registration certificates for those marks are

8  attached hereto as **Exhibit C** and incorporated herein by this reference.

9      22.    Plaintiff is also the current owner of the following "got chocolate milk?" service marks

10  and trademarks registered with the USPTO:  Reg. Nos. 3,902,992; 3,965,245; and 4,197,142.  True and

11  correct copies of the registration certificates for those marks are attached hereto as **Exhibit D** and

12  incorporated herein by this reference.

13      23.    Continuously since on or about November 15, 1993, Plaintiff has used the "got milk?"

14  marks to identify its goods and services and to distinguish them from those offered and sold by others,

15  by, among other things, prominently displaying the "got milk?" marks on grocery store display ads,

16  print and television ads, and websites including, but not limited to, social media sites such as Twitter

17  and Facebook.

18      24.    On or about October 23, 1997, Plaintiff registered the domain name gotmilk.com.

19  Plaintiff subsequently created a website at that domain name to promote the "got milk?" marks and the

20  goods and services associated with those marks.

21      25.    Through widespread public acceptance and recognition, the "got milk?" marks have

22  become assets of substantial value as symbols of Plaintiff, Plaintiff's quality goods and services, and

23  goodwill.

24      26.    From 1994 through 2014, Plaintiff has won numerous awards for its advertisements

1  related to the "got milk?" campaign.  A true and correct copy of a document listing those awards is

2  attached hereto as **Exhibit E** and incorporated herein by this reference.

3  <u>**LICENSE AGREEMENTS BETWEEN PLAINTIFF & DEFENDANT BRIDGE**</u>

4       27.    On or about April 19, 2002, Plaintiff and BRIDGE entered into a written License

5
Agreement effective from April 16, 2002 through April 16, 2007 ("2002 Agreement").  In the 2002

6
Agreement, Plaintiff granted BRIDGE a non-exclusive, non-transferable license to create, distribute,

7
and sell chocolate tins and chocolate bars bearing the "got milk?" marks.  Section 16.c. of the 2002

8
Agreement provided that the "license granted hereunder is personal to [BRIDGE] and may not be sub-

9
10  licensed."

11       28.    On or about May 24, 2007, Plaintiff and BRIDGE entered into a new written License

12
Agreement effective from April 17, 2007 through April 16, 2008 ("2007 Agreement").  In the 2007

13
Agreement, Plaintiff granted BRIDGE a non-exclusive, non-transferable license to create, distribute,

14
and sell chocolates, cocoa mix, and chocolate products bearing the "got milk?" marks.  Section 10.3 of

15
16  the 2007 Agreement provides that BRIDGE "may not assign any of its rights or delegate any of its

17  duties under this Agreement . . . without the prior written consent of [Plaintiff]."

18       29.    On or about June 3, 2008, Plaintiff and BRIDGE entered into a new written License

19
Agreement effective from June 3, 2008 through June 2, 2009 ("2008 Agreement").  In the 2008

20
Agreement, Plaintiff granted BRIDGE a non-exclusive, non-transferable license to create, distribute,

21
22  and sell chocolates, cocoa mix, and chocolate products bearing the "got milk?" marks.  Section 10.3 of

23  the 2007 Agreement provides that BRIDGE "may not assign any of its rights or delegate any of its

24  duties under this Agreement . . . without the prior written consent of [Plaintiff]."

25       30.    On or about February 10, 2010, Plaintiff and BRIDGE entered into a new written

26
License Agreement effective from July 1, 2009 through June 30, 2010 ("2009 Agreement").  In the

27
2009 Agreement, CMPB granted BRIDGE a non-exclusive, non-transferable license to create,

28

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911  FAX: (916) 498-9991

**COMPLAINT**

distribute, and sell chocolate, cocoa mix, and chocolate products bearing the "got milk?" marks.  A true and correct copy of the 2009 Agreement is attached hereto as **Exhibit F** and incorporated herein by this reference.

31.     Section 11.1 of the 2009 Agreement provides, in relevant part, that "the United States District Court for the Eastern District of California shall have exclusive jurisdiction and venue over all controversies in connection herewith, and each party hereby consents to such exclusive and personal jurisdiction and venue."

32.     Section 11.3 of the 2009 Agreement provides that BRIDGE "may not assign any of its rights or delegate any of its duties under this Agreement . . . without the prior written consent of [Plaintiff]."

33.     Section 11.11 of the 2009 Agreement provides that "[i]n the event of any action, suit, or proceeding brought by either party to enforce the terms of this Agreement, the prevailing party shall be entitled to receive its costs, expert witness fees, and reasonable attorneys' fees and expenses, including costs and fees on appeal."

34.     On or about July 1, 2010, after the 2009 Agreement expired by its terms, Plaintiff and BRIDGE entered into an implied License Agreement.  The terms of the implied License Agreement were identical in all material respects to the terms of the 2009 Agreement.

35.     The implied License Agreement continued throughout the remainder of 2010 and 2011.

**COMMUNICATIONS BETWEEN BRIDGE/LITTON & MELVILLE**

**First Unauthorized "got milk?" Transaction**

36.     During January 2012, an employee of the Melville Candy Company, a Massachusetts corporation ("Melville"), attended the Fancy Food Show in San Francisco, California.  While at that show, LITTON approached Melville's employee and showed him some "got milk?" branded chocolate products.

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

7
**COMPLAINT**

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

37.    On January 21, 2012, LITTON emailed the Melville employee to inquire about purchasing some hot chocolate spoons from Melville using "our 'got milk? chocolate' brand."

38.    Sometime during the first half of 2012, LITTON advised Melville that he had the right to grant licenses to use the "got milk?" brand.  As a result, LITTON negotiated a royalty rate with Melville so that it could use the "got milk?" marks to create a line of "got milk?" "Mini Marshmallow Hot Chocolate Spoons."  That product was then sold to the public including, but not limited to, on the website located at www.bonton.com and possibly in other venues.  A true and correct copy of a recent printout from that website is attached hereto as **Exhibit G** and incorporated herein by this reference.

39.    On or about January 5, 2013, Melville paid BRIDGE $7,500.00 for a "Got Milk License Bon Ton order."  A true and correct copy of Melville's Vendor Quick Report evidencing this payment is attached hereto as **Exhibit H** and incorporated herein by this reference.

### Second Unauthorized "got milk?" Transaction

40.    On May 16, 2014, the Melville employee emailed LITTON to ask him "a question about the got milk license."  The employee also informed LITTON that Melville was in the middle of a huge transaction with Wal-Mart for approximately 200,000-500,000 units of the "got milk?" "Mini Marshmallow Hot Chocolate Spoons" for the 2014 Holiday season.

41.    On May 19, 2014, LITTON emailed the Melville employee to inform him:  "You are good to go with the got milk label on the same 5% terms as we had for last year."

42.    During June 2014, LITTON and the Melville employee exchanged emails regarding the pending "got milk?" "Mini Marshmallow Hot Chocolate Spoons" transaction with Wal-Mart.  The Melville employee confirmed that Melville would supply Wal-Mart with 525,000 "got milk?" "Mini Marshmallow Hot Chocolate Spoons."

### PLAINTIFF TERMINATES IMPLIED LICENSE AGREEMENT

43.    On August 20, 2013, Plaintiff terminated the implied License Agreement with BRIDGE

1  when W. Stephen James, Plaintiff's Executive Director, wrote to LITTON to advise him that BRIDGE

2  was no longer authorized to use the "got milk?" marks in any fashion.

3        44.    BRIDGE refused to comply with Mr. James's request and continued to use the "got

4  milk?" marks although it was no longer licensed to do so.

5        45.    On September 30, 2013, without authorization from Plaintiff, BRIDGE filed a trademark

6

7  application with the USPTO to register "GOT MILK CHOCOLATE?" for use in relation to

8  "chocolate" (Serial No. 86,078,193). A true and correct copy of a printout from the USPTO's online

9  database evidencing this application is attached hereto as **Exhibit I** and incorporated herein by this

10  reference.

11        46.    On or about October 30, 2013, Plaintiff and BRIDGE entered into a non-confidential

12  Settlement Agreement to resolve some issues in dispute between them. LITTON was not a party to that

13  Agreement. The Settlement Agreement included the following provisions:

14

15       • Plaintiff agreed to give BRIDGE until March 1, 2014 to sell off its remaining

16         inventory of "got milk?" chocolate products and straws;

17       • BRIDGE agreed that, no later than November 7, 2013, it would transfer the

18         gotmilkchocolates.com domain name to Plaintiff.

19       • Plaintiff agreed to re-direct the gotmilkchocolates.com domain name to

20         bridgebrandschocolate.com until March 1, 2014.

21

22       • BRIDGE agreed that, no later than November 1, 2013, it would permanently

23         abandon its "GOT MILK CHOCOLATE?" trademark application on file with the

24         USPTO.

25       • Plaintiff agreed to forego pursuing BRIDGE for any past due royalties owed to

26         Plaintiff.

27        47.    Plaintiff has timely complied with all aspects of the Settlement Agreement.

28

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

48.     On March 6, 2014, Plaintiff discovered that BRIDGE was in breach of the Settlement Agreement because it was still selling "got milk?" products at its retail store in San Francisco.

## FIRST COUNT

## TRADEMARK/SERVICE MARK INFRINGEMENT

### (Against Defendants Bridge Brands and Michael R. Litton)

49.     Plaintiff re-alleges and fully incorporates by reference herein paragraphs 1 through 48 of this Complaint.

50.     Notwithstanding Plaintiff's well-known and prior common law and statutory rights in the "got milk?" marks, Defendants, with at least constructive notice of Plaintiff's federal registration rights under 15 U.S.C. § 1072, and long after Plaintiff established its rights in "got milk?", adopted and used Plaintiff's "got milk?" marks in California and in interstate commerce by holding itself out to third parties including, but not limited to the Melville Candy Company, as having the authority to grant licenses and/or sub-licenses to use the "got milk?" marks.   This use of the "got milk?" marks constitutes trademark and service mark infringement and causes likelihood of confusion, deception, and mistake.

51.     As alleged *supra*, in 2012 while BRIDGE was still under an implied License Agreement with Plaintiff and LITTON had no license to use the "got milk?" marks, Defendants entered into an unauthorized sub-license Agreement with Melville to use the "got milk?" marks on a line of "Mini Marshmallow Hot Chocolate Spoons" that were offered for sale at the website located at www.bonton.com.   Plaintiff never authorized either BRIDGE or LITTON to sub-license the "got milk?" marks to any third party.

52.     Beginning in July 2014, when Plaintiff first discovered the aforementioned infringement of its "got milk?" marks, Plaintiff asked Defendants to cease and desist from their acts of infringement. To date, Defendants have denied, in writing, that the aforementioned infringement ever happened.

53.   Plaintiff is informed and believes, and on that basis alleges, that the acts of Defendants described *supra*, have been committed with the intent to cause confusion, mistake, and to deceive and amount to trademark and service mark infringement in violation of 15 U.S.C. § 1114.

54.   By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer damage to its business, reputation and goodwill and the loss of sales and profits Plaintiff would have made but for Defendants' acts.

<div align="center">

**SECOND COUNT**

**TRADEMARK/SERVICE MARK INFRINGEMENT**

**(Against Defendants Bridge Brands and Michael R. Litton)**

</div>

55.   Plaintiff re-alleges and fully incorporates by reference herein paragraphs 1 through 54 of this Complaint.

56.   Notwithstanding Plaintiff's well-known and prior common law and statutory rights in the "got milk?" marks, the Defendants, with at least constructive notice of Plaintiff's federal registration rights under 15 U.S.C. § 1072, and long after Plaintiff established its rights in "got milk?", adopted and used Plaintiff's "got milk?" marks in California and in interstate commerce by holding themselves out to third parties including, but not limited to the Melville Candy Company, as having the authority to grant licenses and/or sub-licenses to use the "got milk?" marks.  This use of the "got milk?" marks constitutes trademark and service mark infringement and causes likelihood of confusion, deception, and mistake.

57.   As alleged *supra*, in 2014 Defendants BRIDGE and LITTON entered into a second unauthorized sub-license Agreement with Melville to use the "got milk?" marks on a line of 525,000 "Mini Marshmallow Hot Chocolate Spoons" that Melville was planning on supplying to Wal-Mart for the 2014 Holiday season.

58.   Beginning in July 2014, when Plaintiff first discovered the aforementioned infringement

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

<div align="center">

11
**COMPLAINT**

</div>

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

1  of its "got milk?" marks, Plaintiff asked the Defendants to cease and desist from their acts of

2  infringement.  To date, the Defendants have denied, in writing, that the aforementioned infringement

3  ever happened.

4       59.    Plaintiff is informed and believes, and on that basis alleges, that the acts of the

5  Defendants described *supra*, have been committed with the intent to cause confusion, mistake, and to

6

7  deceive and amount to trademark and service mark infringement in violation of 15 U.S.C. § 1114.

8       60.    By reason of the Defendants' acts alleged herein, Plaintiff has suffered and will suffer

9  damage to its business, reputation and goodwill and the loss of sales and profits Plaintiff would have

10  made but for the Defendants' acts.

11  <div align="center">**THIRD COUNT**</div>

12  <div align="center">**TRADEMARK/SERVICE MARK INFRINGEMENT**</div>

13  <div align="center">**(Against Defendant Bridge Brands)**</div>

14

15       61.    Plaintiff re-alleges and fully incorporates by reference herein paragraphs 1 through 60 of

16  this Complaint.

17       62.    Notwithstanding Plaintiff's well-known and prior common law and statutory rights in

18  the "got milk?" marks, BRIDGE, with at least constructive notice of Plaintiff's federal registration

19  rights under 15 U.S.C. § 1072, and long after Plaintiff established its rights in "got milk?", adopted and

20  used Plaintiff's "got milk?" marks in California and in interstate commerce by continuing to hold itself

21  out as an authorized licensee of the "got milk?" marks after March 1, 2014 when, pursuant to a

22  Settlement Agreement with Plaintiff, BRIDGE was required to stop all sales of any remaining "got

23  milk?" products.  After March 1, 2014, BRIDGE continued to offer for sale and sell products bearing

24  the "got milk?" marks without authorization from Plaintiff.  This use of the "got milk?" marks

25  constitutes trademark and service mark infringement and causes likelihood of confusion, deception, and

26

27  mistake.

28

<div align="center">12
**COMPLAINT**</div>

63.     As alleged *supra*, in October 2013 Plaintiff and BRIDGE entered into a non-confidential Settlement Agreement to resolve some issues in dispute between them.  The Settlement Agreement gave BRIDGE until March 1, 2014 to sell off its remaining inventory of "got milk?" chocolate products and straws.

64.     On or about March 6, 2014, Plaintiff discovered that BRIDGE was continuing to offer "got milk?" products for sale.

65.     Plaintiff is informed and believes, and on that basis alleges, that the acts of BRIDGE described *supra*, have been committed with the intent to cause confusion, mistake, and to deceive and amount to trademark and service mark infringement in violation of 15 U.S.C. § 1114.

66.     By reason of BRIDGE's acts alleged herein, Plaintiff has suffered and will suffer damage to its business, reputation and goodwill and the loss of sales and profits Plaintiff would have made but for BRIDGE's acts.

## FOURTH COUNT

## UNFAIR COMPETITION BY INFRINGEMENT OF COMMON-LAW RIGHTS

### (Against Defendants Bridge Brands and Michael R. Litton)

67.     Plaintiff re-alleges and fully incorporates by reference herein paragraphs 1 through 66 of this Complaint.

68.     The acts of the Defendants described *supra*, constitute unfair competition and an infringement of Plaintiff's common-law rights in the "got milk?" marks.

69.     Continuously since on or about November 15, 1993, Plaintiff has used the "got milk?" marks to identify its goods and services and to distinguish them from those offered and sold by others, by, among other things, prominently displaying the "got milk?" marks on grocery store display ads, print and television ads, and websites including, but not limited to social media sites such as Twitter and Facebook.  In addition, Plaintiff has prominently displayed the "got milk?" marks on letterheads,

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

bills, direct mail advertising, radio and television advertising, and telephone directory advertising. Some of that advertising has been made in the trade area where the Defendants are doing business. As a result of said sales and advertising by Plaintiff under the "got milk?" marks, said marks have developed and now have a secondary and distinctive trademark meaning to purchasers in the Defendants' trade area. The "got milk?" marks have come to indicate to those purchasers a meaning of goods and services originating only with Plaintiff. As a result of said association by purchasers of the "got milk?" marks with Plaintiff, the Defendants' use of the "got milk?" marks is likely to cause those purchasers to be confused.

70.     The Defendants have infringed the "got milk?" marks as alleged herein.

71.     Plaintiff is informed and believes that the Defendants' infringement was done with the intent to deceive the public into believing that goods and services sold by the Defendants are made by, approved by, sponsored by or affiliated with, Plaintiff. Plaintiff is informed and believes that the Defendants' acts as alleged herein were committed with the intent to pass off and palm off the Defendants' goods and services as those of Plaintiff, and with the intent to deceive and defraud the public.

72.     By reason of the Defendants' acts alleged herein, Plaintiff has suffered and will suffer damage to its business, reputation and good will and the loss of sales and profits Plaintiff would have made but for the Defendants' acts.

## FIFTH COUNT

## FALSE DESIGNATION OF ORIGIN

### (Against Defendants Bridge Brands and Michael R. Litton)

73.     Plaintiff re-alleges and fully incorporates by reference herein paragraphs 1 through 72 of this Complaint.

74.     Defendants have caused goods and services to enter into interstate commerce with the

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

designation and representation "got milk?" connected therewith.  Said use of "got milk?" is a false designation of origin which is likely to cause confusion, to cause mistake and to deceive as to the affiliation, connection or association of the Defendants with Plaintiff and as to the origin, sponsorship, or approval of such goods or services by Plaintiff.

75.     These acts are in violation of 15 U.S.C.A. § 1125(a), in that the Defendants have used in connection with goods and services a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of the Defendants with Plaintiff and as to the origin, sponsorship, and approval of the Defendants' goods, services and commercial activities by Plaintiff.

76.     By reason of the Defendants' acts alleged herein, Plaintiff has suffered and will suffer damage to its business, reputation and goodwill and the loss of sales and profits Plaintiff would have made but for the Defendants' acts.

### SIXTH COUNT

### TRADEMARK/SERVICE MARK DILUTION

### (Against Defendants Bridge Brands and Michael R. Litton)

77.     Plaintiff re-alleges and fully incorporates by reference herein paragraphs 1 through 76 of this Complaint.

78.     The "got milk?" marks are strong and distinctive, have long been used in connection with the goods and services in relation with which they are used, have long been the subject of substantial advertising and promotion, have won numerous awards (**Exhibit E**), have been used and advertised in the United States and internationally, are widely recognized by consumers and those in the trade, are in substantially exclusive use by Plaintiff and are federally registered, as stated *supra*.

79.     The "got milk" marks are recognized by the general consuming public as a designation of source for Plaintiff's goods and services and are therefore famous marks.

80.   The acts of the Defendants alleged herein began after the "got milk?" marks became famous.

81.   Defendants have made use of "got milk?" as a service mark and trademark in connection with goods and services which the Defendants have offered for sale and sold in interstate commerce, including in the State of California.

82.   Defendants' use of "got milk?" as a service mark and a trademark creates a likelihood of association with Plaintiff's famous "got milk?" marks arising from its similarity to Plaintiff's famous service marks and trademarks.

83.   Defendants' acts are in violation of Lanham Act § 43(c) in that they are likely to cause dilution by blurring and impairing the distinctiveness of Plaintiff's famous "got milk?" marks, all to the irreparable injury to and damage of Plaintiff.

84.   Defendants' acts are also in violation of Lanham Act § 43(c) in that they are likely to cause dilution by tarnishment through harming the reputation of Plaintiff's famous "got milk?" marks, all to the irreparable injury to and damage of Plaintiff.

85.   Plaintiff is informed and believes that the Defendants committed these acts willfully and with the intent to create an association with Plaintiff's famous "got milk?" marks.

86.   Plaintiff is informed and believes that the Defendants willfully intended to trade on the recognition of Plaintiff's famous marks and willfully intended to harm the reputation of the famous marks.

87.   Defendants threaten to continue to do the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable damage.

88.   It would be difficult to ascertain the amount of compensation which could afford Plaintiff adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required.  Plaintiff's remedy at law is not adequate to compensate it for the injuries threatened.

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

**SEVENTH COUNT**

**COUNTERFEITING**

**(Against Defendants Bridge Brands and Michael R. Litton)**

89.     Plaintiff re-alleges and fully incorporates by reference herein paragraphs 1 through 88 of this Complaint.

90.     Notwithstanding Plaintiff's well-known and prior common law and statutory rights in the "got milk?" marks, Defendants, with at least constructive notice of Plaintiff's federal registration rights under 15 U.S.C. § 1072, and long after Plaintiff established its rights in "got milk?", counterfeited Plaintiff's "got milk?" marks, pursuant to 15 U.S.C. §§ 1114 and 1116, in California and in interstate commerce as described *supra*.

91.     The mark used by Defendants in its unauthorized dealings with the Melville Candy Company and other third parties was a non-genuine mark identical to the "got milk?" marks.

92.     As described *supra*, the "got milk?" marks are registered on the Principal Register at the USPTO for use on the same goods to which Defendants applied the mark, namely, chocolate, chocolate candies, chocolate syrup and chocolate powder.

93.     Plaintiff's "got milk?" marks were in use at all times relevant to this lawsuit.

94.     BRIDGE was not authorized to use Plaintiff's "got milk?" marks on chocolate products after its implied License Agreement was terminated by Plaintiff.  LITTON was never authorized to use Plaintiff's "got milk?" marks.

95.     By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer damage to its business, reputation and goodwill and the loss of sales and profits Plaintiff would have made but for Defendants' acts.

//

//

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

## EIGHTH COUNT

## BREACH OF IMPLIED LICENSE AGREEMENT

### (Against Defendant Bridge Brands)

96.     Plaintiff re-alleges and fully incorporates by reference herein paragraphs 1 through 95 of this Complaint.

97.     On or about July 1, 2010, Plaintiff and BRIDGE entered into an implied License Agreement.   The terms of the implied License Agreement were identical in all material respects to the terms of the 2009 Agreement, attached hereto as **Exhibit F.**

98.     Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the implied License Agreement.

99.     Sometime in 2012, BRIDGE breached the implied License Agreement when it entered into an unauthorized sub-license Agreement with Melville Candy Company to use the "got milk?" marks on a line of "Mini Marshmallow Hot Chocolate Spoons" that were offered for sale at the website located at www.bonton.com and possibly in other venues.   Plaintiff never authorized BRIDGE to sub-license the "got milk?" marks to any third party.

100.    Plaintiff is entitled to recover from BRIDGE the $7,500.00 payment made by Melville to BRIDGE for the unauthorized sub-license as well as any other payments made to BRIDGE by Melville or any other third party in violation of the implied License Agreement.   Plaintiff is also entitled to payment of interest on all past due amounts.

101.    As a result of BRIDGE's breach of the implied License Agreement, Plaintiff has suffered damages as described above.

/ /

/ /

/ /

## NINTH COUNT

## BREACH OF SETTLEMENT AGREEMENT

### (Against Defendant Bridge Brands)

102.    Plaintiff re-alleges and fully incorporates by reference herein paragraphs 1 through 101 of this Complaint.

103.    On or about October 30, 2013, Plaintiff and BRIDGE entered into a non-confidential Settlement Agreement to resolve some issues in dispute between them.  LITTON was not a party to that Agreement.  The Settlement Agreement included the following provisions:

- Plaintiff agreed to give BRIDGE until March 1, 2014 to sell off its remaining inventory of "got milk?" chocolate products and straws;

- BRIDGE agreed that, no later than November 7, 2013, it would transfer the gotmilkchocolates.com domain name to Plaintiff.

- Plaintiff agreed to re-direct the gotmilkchocolates.com domain name to bridgebrandschocolate.com until March 1, 2014.

- BRIDGE agreed that, no later than November 1, 2013, it would permanently abandon its "GOT MILK CHOCOLATE?" trademark application on file with the USPTO.

- Plaintiff agreed to forego pursuing BRIDGE for any past due royalties owed to Plaintiff.

104.    Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Settlement Agreement.

105.    On or about March 2, 2014, BRIDGE breached the Settlement Agreement when it continued to offer for sale and sell products bearing the "got milk?" marks without authorization from Plaintiff.

19
**COMPLAINT**

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

106.   As a result of BRIDGE's breach of the Settlement Agreement, Plaintiff has suffered damages as described above.

## TENTH COUNT

## FRAUD

### (Against Defendants Bridge Brands and Michael R. Litton)

107.   Plaintiff re-alleges and fully incorporates by reference herein paragraphs 1 through 106 of this Complaint.

108.   On January 21, 2012, LITTON contacted an employee of the Melville Candy Company to inquire about purchasing some hot chocolate spoons.  LITTON advised the employee that he and his company BRIDGE BRANDS were authorized to grant licenses and/or sub-licenses to use the "got milk?" marks when this was, in fact, not true and LITTON and BRIDGE knew at the time that it was not true.  At the time, BRIDGE was under an implied License Agreement with Plaintiff.  Neither LITTON nor BRIDGE ever disclosed their communications with Melville to Plaintiff even though they had many opportunities to do so.

109.   Nine days later, on January 30, 2012, W. Stephen James, Plaintiff's Executive Director, wrote to LITTON to inform him that, a review of the accounting records relating to BRIDGE's licensing relationship with Plaintiff, revealed that BRIDGE's last quarterly royalty report and payment were for the first quarter of 2010.  Mr. James further informed LITTON that he and Plaintiff's Chief Financial Officer planned to meet with LITTON in the near future to obtain a full accounting of BRIDGE's sales of "got milk?" products since June 2010 as well as an inventory of BRIDGE's "got milk?" merchandise.  At that time, LITTON did not advise Mr. James that he had contacted an employee of the Melville Candy Company regarding licensing and/or sub-licensing the "got milk?" marks.

110.   On February 17, 2012, LITTON emailed Mr. James a lengthy response to the January 30

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

20
**COMPLAINT**

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

letter.  In his February 17 email, LITTON asked Mr. James for a "moratorium" on royalties through the end of 2012 due to BRIDGE's alleged financial struggles.  At that time, LITTON did not advise Mr. James that he had contacted an employee of the Melville Candy Company regarding licensing and/or sub-licensing the "got milk?" marks.

111.    The representations and failures to disclose information and suppressions of information herein alleged to have been made by the Defendants were made with the intent to induce Plaintiff to act in the manner herein alleged in reliance thereon.

112.    Plaintiff, at the time these failures to disclose and suppressions of facts occurred, and at the time Plaintiff took the actions herein alleged, was ignorant of the existence of the facts that the Defendants suppressed and failed to disclose.  If Plaintiff had been aware of the existence of the facts not disclosed by the Defendants, Plaintiff would not have, as it did, continued the implied License Agreement with BRIDGE.  Plaintiff's reliance was justifiable under the circumstances because it was in regular communications with LITTON who nevertheless failed to disclose to Plaintiff anything regarding the aforementioned unauthorized communications and transactions.

113.    As a proximate result of Defendants' failures to disclose and suppressions of facts as herein alleged, Plaintiff continued to license the "got milk?" marks to BRIDGE thus missing out on the payments that Melville and others paid Defendants, as well as more lucrative licensing opportunities with law-abiding licensees.  As a result, Plaintiff has been damaged in a sum to be determined at trial.

114.    The aforementioned conduct of Defendants was a deceit or concealment of a material fact known to Defendants with the intention on the part of Defendants of depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

//

**WHEREFORE, PLAINTIFF prays for relief as follows:**

1.     That this Court grant a temporary restraining order and preliminary and permanent injunctions enjoining Defendants, their officers, agents, servants, employees and attorneys and all those persons in active concert or participation from:

     a.   Using the "got milk?" marks or any confusingly similar designation alone or in combination with other words, as a trademark, service mark, trade name, business name or otherwise, to market, advertise or identify Defendants' goods and services, including but not limited to chocolate products;

     b.   Otherwise infringing Plaintiff's "got milk?" marks;

     c.   Unfairly competing with Plaintiff in any manner whatsoever;

     d.   Causing likelihood of confusion, injury to business reputation, or dilution of the distinctiveness of Plaintiff's symbols, labels or forms of advertisement;

     e.   Using the "got milk?" marks on Defendants' websites including, but not limited to, the one located at bridgebrandschocolate.com, or in any of Defendants' marketing and promotional activities including, but not limited to, on signs, business cards, print ads, digital ads, store displays, catalogs, and at food shows;

     f.   Manufacturing, reproducing, distributing, adapting, displaying, advertising, promoting, offering for sale and/or selling, any materials that are substantially similar to the "got milk?" marks, and to deliver to the Court for destruction or other reasonable disposition all such materials and means for producing the same in Defendants' possession or control; and

     g.   Using any domain name containing "got milk?" or anything confusingly similar.

2.     That this Court order Defendants to file with this Court and serve on Plaintiff within thirty (30) days after the service of an injunction, a report in writing under oath, setting forth in detail

Knox, Lemmon & Anapolsky, LLP
300 Capitol Mall, Suite 1125, Sacramento, CA 95814
Tele: (916) 498-9911 Fax: (916) 498-9991

1  the manner and form in which Defendants have complied with the injunction.

2      3.      That this Court order Defendants to deliver up and destroy all devices, literature,

3  advertising and other material bearing the "got milk?" marks.

4      4.      That this Court declare that Defendants have infringed and diluted the "got milk?"

5  marks.

6

7      5.      That this Court order Defendants not to adopt any business name that contains "got

8  milk?" or anything confusingly similar.

9      6.      That this Court award Plaintiff Defendants' infringement profits after an accounting as

10  well as actual damages, consequential damages, and statutory damages as allowed by applicable law.

11      7.      That this Court award Plaintiff treble the amount of actual damages suffered by Plaintiff.

12

13      8.      That this Court award Plaintiff punitive and exemplary damages against Defendants and

14  in favor of Plaintiff in a sum to be determined at trial by reason of Defendants' fraud and palming off.

15      9.      That this Court award Plaintiff its reasonable attorneys' fees, costs, expenses, and

16  interest.

17      10.     That Plaintiff have such other and further relief as the Court may deem just.

18  Dated:  August 29, 2014                KNOX, LEMMON & ANAPOLSKY, LLP

19

20                                         STEPHEN J. BYERS,

21                                         Attorneys for Plaintiff CALIFORNIA MILK

22                                         PROCESSOR BOARD

23

24

25

26

27

28

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

1

**DEMAND FOR JURY TRIAL**

2       Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all

3 issues so triable.

4

5 Dated:  August 29, 2014                   KNOX, LEMMON & ANAPOLSKY, LLP

6

7

8                                    STEPHEN J. BYERS,
Attorneys for Plaintiff CALIFORNIA MILK
PROCESSOR BOARD

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KNOX, LEMMON & ANAPOLSKY, LLP
300 CAPITOL MALL, SUITE 1125, SACRAMENTO, CA 95814
TELE: (916) 498-9911 FAX: (916) 498-9991

24
**COMPLAINT**

# EXHIBIT A

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

**United States Patent and Trademark Office**

Corrected

Reg. No. 1,903,870

Registered July 4, 1995

OG Date May 14, 1996

## SERVICE MARK
## PRINCIPAL REGISTER

## GOT MILK?

CALIFORNIA FLUID MILK PROCES-
SOR ADVISORY BOARD (CALIFOR-
NIA STATE AGENCY)
1801A FOURTH ST.
BERKELEY, CA 94710

NO CLAIM IS MADE TO THE EXCLU-
SIVE RIGHT TO USE "MILK", APART
FROM THE MARK AS SHOWN.

FOR: ASSOCIATION SERVICES PRO-
VIDED TO FLUID MILK PRODUCERS
IN THE STATE OF CALIFORNIA;
NAMELY, THE ADVERTISING AND
PROMOTION OF THE SALE AND USE
OF FLUID MILK, IN CLASS 42 (U.S.
CLS. 100 AND 101).

FIRST USE 11-15-1993; IN COMMERCE
11-15-1993.

SER. NO. 74-452,556, FILED 10-29-1993.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on May 14, 1996.*

COMMISSIONER OF PATENTS AND TRADEMARKS

# EXHIBIT B

# United States of America

## United States Patent and Trademark Office

# got milk?

**Reg. No. 3,730,703**
Registered Dec. 29, 2009

**Int. Cls.: 6, 9, 10, 11, 14, 16, 18, 20, 21, 22, 24, 25, 26, 27, 28 and 30**

**TRADEMARK**
**PRINCIPAL REGISTER**

CALIFORNIA MILK PROCESSOR BOARD (CALIFORNIA STATE INSTRUMENTALITY)
SUITE 202
101 SOUTH EL CAMINO REAL
SAN CLEMENTE, CA 92672

FOR: METAL KEY HOLDERS, IN CLASS 6 (U.S. CLS. 2, 12, 13, 14, 23, 25 AND 50).

FIRST USE 1-1-2002; IN COMMERCE 1-1-2002.

FOR: ORNAMENTAL NOVELTY MAGNETS, SUNGLASSES AND MOUSE PADS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-1-1997; IN COMMERCE 1-1-1997.

FOR: BABY BOTTLES AND PACIFIERS FOR BABIES, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 1-1-2000; IN COMMERCE 1-1-2000.

FOR: FLASHLIGHTS, IN CLASS 11 (U.S. CLS. 13, 21, 23, 31 AND 34).

FIRST USE 1-1-1997; IN COMMERCE 1-1-1997.

FOR: CHARMS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FIRST USE 2-1-2006; IN COMMERCE 2-1-2006.

FOR: POSTERS, STICKERS, PENCILS, PENCIL CASES, PENS, ERASERS, BUMPER STICKERS, TEMPORARY TATTOOS, PADFOLIOS AND BOOKMARKS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 12-1-1996; IN COMMERCE 12-1-1996.

FOR: UMBRELLAS, GOLF UMBRELLAS, TOTE BAGS, DUFFEL BAGS, CLOTH SHOPPING BAGS AND MESSENGER BAGS , IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 1-1-1998; IN COMMERCE 1-1-1998.

FOR: PLASTIC CRATES, PICTURE FRAMES AND PLASTIC NOVELTY LICENSE PLATES, IN CLASS 20 (U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FIRST USE 1-1-2000; IN COMMERCE 1-1-2000.

*David J. Kappos*

Director of the United States Patent and Trademark Office

**Reg. No. 3,730,703**  FOR: NON-METAL PIGGY BANKS, DRINKING GLASSES, PLASTIC CUPS, GLASS MUGS, COFFEE CUPS, TRAINING CUPS FOR BABIES AND CHILDREN, PORTABLE CAN COOLERS, ICE CREAM SCOOPS AND LUNCH BOXES, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 7-1-1996; IN COMMERCE 7-1-1996.

FOR: LAUNDRY BAGS AND LANYARDS FOR HOLDING KEYS, IN CLASS 22 (U.S. CLS. 1, 2, 7, 19, 22, 42 AND 50).

FIRST USE 1-1-2002; IN COMMERCE 1-1-2002.

FOR: GOLF TOWELS AND POT HOLDERS, IN CLASS 24 (U.S. CLS. 42 AND 50).

FIRST USE 1-1-2002; IN COMMERCE 1-1-2002.

FOR: CLOTHING, NAMELY, T-SHIRTS, SHIRTS, SHORT-SLEEVED SHIRTS, LONG-SLEEVED SHIRTS, SWEAT SHIRTS, HOODED SWEAT SHIRTS, POLO SHIRTS, FLEECE PULLOVERS, APRONS, BABY BIBS NOT OF PAPER, INFANT UNDERWEAR, WRIST BANDS, HATS AND CAPS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 8-1-1996; IN COMMERCE 8-1-1996.

FOR: BUTTONS, IN CLASS 26 (U.S. CLS. 37, 39, 40, 42 AND 50).

FIRST USE 1-1-1999; IN COMMERCE 1-1-1999.

FOR: DOOR MATS AND PERSONALIZED DOOR MATS, IN CLASS 27 (U.S. CLS. 19, 20, 37, 42 AND 50).

FIRST USE 1-1-2005; IN COMMERCE 1-1-2005.

FOR: YO-YOS, GOLF TEES, GOLF TEE MARKERS, GOLF BALLS, SQUEEZE TOYS, STUFFED TOY ANIMALS, BEAN BAG DOLLS, BATTERY OPERATED TOY VEHICLES, SOCCER BALLS AND FLYING DISCS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 7-1-1996; IN COMMERCE 7-1-1996.

FOR: CHOCOLATE, CHOCOLATE CANDIES, CHOCOLATE SYRUP AND CHOCOLATE POWDER, IN CLASS 30 (U.S. CL. 46).

FIRST USE 12-6-2002; IN COMMERCE 12-6-2002.

OWNER OF U.S. REG. NOS. 1,903,870 AND 2,689,741.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MILK", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF THE WORDING "GOT MILK?" IN LOWER CASE LETTERS IN PHENIX AMERICAN FONT.

SER. NO. 77-635,854, FILED 12-18-2008.

WENDY GOODMAN, EXAMINING ATTORNEY

# EXHIBIT C

Int. Cls.: 9, 16, 21 and 28

Prior U.S. Cls.: 2, 5, 13, 21, 22, 23, 26, 29, 30, 33, 36, 37, 38, 40 and 50

Reg. No. 2,689,741

## United States Patent and Trademark Office

Registered Feb. 25, 2003

### TRADEMARK
### PRINCIPAL REGISTER

## GOT MILK?

CALIFORNIA FLUID MILK PROCESSOR ADVISORY BOARD (CALIFORNIA STATE AGENCY)
1801A FOURTH ST.
BERKELEY, CA 94710

FOR: ORNAMENTAL NOVELTY MAGNETS, SUNGLASSES, EYEGLASS CASES, AND HOLDERS FOR COMPACT DISCS , IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 12-0-1994; IN COMMERCE 12-0-1994.

FOR: PRINTED MATTER, NAMELY POSTERS, PRINTED PAPER SIGNS, PAPER BANNERS, BUMPER STICKERS, FOLDERS, STICKERS, NOTE PADS, PAPER TABLE CLOTHS; AND PENCILS, ERASERS AND PENS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 12-0-1994; IN COMMERCE 12-0-1994.

FOR: COFFEE CUPS, PLASTIC CUPS, DRINKING GLASSES, AND INSULATED THERMAL CONTAINERS FOR FOOD OR BEVERAGES , IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 5-19-0096; IN COMMERCE 6-0-1996.

FOR: GOLF BALLS AND STUFFED TOY ANIMALS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 6-0-1996; IN COMMERCE 6-0-1996.

OWNER OF U.S. REG. NO. 1,903,870.

SER. NO. 76-047,435, FILED 5-12-2000.

JAMES MARCUS, EXAMINING ATTORNEY

# United States of America
## United States Patent and Trademark Office

# got milk?

**Reg. No. 3,798,763**
**Registered June 8, 2010**
**Int. Cl.: 35**

**SERVICE MARK**

**PRINCIPAL REGISTER**

CALIFORNIA MILK PROCESSOR BOARD (CALIFORNIA STATE INSTRUMENTALITY)
SUITE 202
101 SOUTH EL CAMINO REAL
SAN CLEMENTE, CA 92672

FOR: ASSOCIATION SERVICES PROVIDED TO MILK PROCESSORS, NAMELY, ADVERT-
ISING AND PROMOTING THE SALE, USE AND CONSUMPTION OF FLUID MILK
PRODUCTS, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 11-8-1993; IN COMMERCE 11-8-1993.

OWNER OF U.S. REG. NOS. 1,903,870, 2,689,741, AND 3,730,703.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MILK", APART FROM THE
MARK AS SHOWN.

THE MARK CONSISTS OF THE WORDING "GOT MILK?" IN LOWER CASE LETTERS IN
PHENIX AMERICAN FONT.

SER. NO. 77-818,253, FILED 9-2-2009.

AMY HELLA, EXAMINING ATTORNEY



*David J. Kappos*
Director of the United States Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office

# got milk?

**Reg. No. 3,907,296**

**Registered Jan. 18, 2011**

**Int. Cls.: 20 and 30**

**TRADEMARK**

**PRINCIPAL REGISTER**

CALIFORNIA MILK PROCESSOR BOARD (CALIFORNIA STATE INSTRUMENTALITY)
SUITE 202
101 SOUTH EL CAMINO REAL
SAN CLEMENTE, CA 92672

FOR: DRINKING STRAWS, IN CLASS 20 (U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FIRST USE 6-1-2008; IN COMMERCE 6-1-2008.

FOR: FLAVORINGS FOR BEVERAGES, PACKAGED IN DRINKING STRAWS, SOLD AS A UNIT, IN CLASS 30 (U.S. CL. 46).

FIRST USE 6-1-2008; IN COMMERCE 6-1-2008.

OWNER OF U.S. REG. NOS. 1,903,870, 2,689,741, AND 3,730,703.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MILK", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF THE WORDING "GOT MILK?" IN LOWER CASE LETTERS IN PHENIX AMERICAN FONT.

SER. NO. 85-046,683, FILED 5-24-2010.

ELLEN B. AWRICH, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office

# got milk?

**Reg. No. 4,040,794**

**Registered Oct. 18, 2011**

**Int. Cl.: 24**

CALIFORNIA MILK PROCESSOR BOARD (CALIFORNIA STATE INSTRUMENTALITY)
SUITE 202
101 SOUTH EL CAMINO REAL
SAN CLEMENTE, CA 92672

FOR: CHILDREN'S BLANKETS, IN CLASS 24 (U.S. CLS. 42 AND 50).

**TRADEMARK**

FIRST USE 7-1-2009; IN COMMERCE 7-1-2009.

**PRINCIPAL REGISTER**

OWNER OF U.S. REG. NOS. 1,903,870, 3,798,763 AND OTHERS.

THE MARK CONSISTS OF THE WORDING "GOT MILK?" IN LOWER CASE LETTERS IN
PHENIX AMERICAN FONT.

SER. NO. 85-145,293, FILED 10-5-2010.

LINDA LAVACHE, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office

# got milk?

**Reg. No. 4,040,795**

**Registered Oct. 18, 2011**

**Int. Cl.: 21**

**TRADEMARK**

**PRINCIPAL REGISTER**

CALIFORNIA MILK PROCESSOR BOARD (CALIFORNIA STATE INSTRUMENTALITY)
SUITE 202
101 SOUTH EL CAMINO REAL
SAN CLEMENTE, CA 92672

FOR: HOUSEHOLD UTENSILS, NAMELY, SPOON HOLDERS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 10-27-2009; IN COMMERCE 10-27-2009.

OWNER OF U.S. REG. NOS. 1,903,870, 3,798,763 AND OTHERS.

THE MARK CONSISTS OF THE WORDING "GOT MILK?" IN LOWER CASE LETTERS IN PHENIX AMERICAN FONT.

SER. NO. 85-145,689, FILED 10-5-2010.

LINDA LAVACHE, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office

# got milk?

**Reg. No. 4,079,538**

**Registered Jan. 3, 2012**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

CALIFORNIA MILK PROCESSOR BOARD (CALIFORNIA STATE INSTRUMENTALITY)
SUITE 202
101 SOUTH EL CAMINO REAL
SAN CLEMENTE, CA 92672

FOR: COMPUTER STORAGE DEVICES, NAMELY, BLANK FLASH DRIVES, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 10-5-2010; IN COMMERCE 10-5-2010.

OWNER OF U.S. REG. NOS. 1,903,870, 3,730,703 AND OTHERS.

THE MARK CONSISTS OF THE WORDING "GOT MILK?" IN LOWER CASE LETTERS IN PHENIX AMERICAN FONT.

SER. NO. 85-299,181, FILED 4-19-2011.

BRIAN CALLAGHAN, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

# EXHIBIT D

# United States of America
## United States Patent and Trademark Office

## Got Chocolate Milk?

**Reg. No. 3,902,992**
**Registered Jan. 11, 2011**
**Int. Cl.: 35**

**SERVICE MARK**

**PRINCIPAL REGISTER**

CALIFORNIA MILK PROCESSOR BOARD (CALIFORNIA STATE INSTRUMENTALITY)
SUITE 202
101 SOUTH EL CAMINO REAL
SAN CLEMENTE, CA 92672

FOR: ASSOCIATION SERVICES PROVIDED TO MILK PROCESSORS, NAMELY, ADVERT-
ISING AND PROMOTING THE SALE, USE AND CONSUMPTION OF FLUID MILK
PRODUCTS, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 2-3-2000; IN COMMERCE 2-3-2000.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,903,870, 2,689,741, AND 3,730,703.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CHOCOLATE MILK", APART
FROM THE MARK AS SHOWN.

SER. NO. 77-941,855, FILED 2-22-2010.

JENNY PARK, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office

# got chocolate milk?

**Reg. No. 3,965,245**
**Registered May 24, 2011**

**Int. Cl.: 35**

**SERVICE MARK**

**PRINCIPAL REGISTER**

CALIFORNIA MILK PROCESSOR BOARD (CALIFORNIA STATE INSTRUMENTALITY)
SUITE 202
101 SOUTH EL CAMINO REAL
SAN CLEMENTE, CA 92672

FOR: ASSOCIATION SERVICES PROVIDED TO MILK PROCESSORS, NAMELY, ADVERTISING AND PROMOTING THE SALE, USE AND CONSUMPTION OF FLUID MILK PRODUCTS, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 2-3-2000; IN COMMERCE 2-3-2000.

OWNER OF U.S. REG. NOS. 1,903,870, 3,730,703 AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CHOCOLATE MILK", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF THE WORDING "GOT CHOCOLATE MILK?" IN LOWER CASE LETTERS IN PHENIX AMERICAN FONT.

SER. NO. 85-124,071, FILED 9-7-2010.

LINDA LAVACHE, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

# United States of America
## United States Patent and Trademark Office

CHOCOLATE
got milk?

**Reg. No. 4,197,142**

**Registered Aug. 28, 2012**

**Int. Cl.: 25**

**TRADEMARK**

**PRINCIPAL REGISTER**

CALIFORNIA MILK PROCESSOR BOARD (CALIFORNIA STATE INSTRUMENTALITY)
SUITE 202
101 SOUTH EL CAMINO REAL
SAN CLEMENTE, CA 92672

FOR: T-SHIRTS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 1-31-2000; IN COMMERCE 1-31-2000.

OWNER OF U.S. REG. NOS. 1,903,870, 3,902,992, AND 3,965,245.

THE COLOR(S) BLACK AND BROWN IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF THE WORDING "GOT MILK?" IN BLACK LOWER CASE LET-
TERS IN A STYLIZED FONT WITH THE WORD "CHOCOLATE" IN BROWN CAPITAL
LETTERS INSERTED WITH A CARET BETWEEN THE WORDS "GOT" AND "MILK".

SER. NO. 85-406,436, FILED 8-24-2011.

LINDA M. KING, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

# EXHIBIT E

## California Milk Processor Board Advertising Industry Awards
Updated July 2014

| 1994 | | | |
|---|---|---|---|
| Award | Medium | Category | Commercial/Ad |
| Adweek's Best of 1994 | Broadcast | National | Heaven, Diner, Vending Machine |
| San Francisco Show | Broadcast | National Food/Beverage | Aaron Burr |
| | | National Food/Beverage | Couple |
| | · | Consumer Product/Campaign | Baby/Cat, Santa, Life Boat |
| | Outdoor | Outdoor Campaign-Silver | Brownies, Gingerbread Man, Chocolate Chip Cookie |
| | | Out of Home Poster | Graham Cracker |
| | | Standard Painted | Gingerbread Man |
| 1994 One Show | Outdoor | Outdoor/Single Commercials | Cupcakes |
| | | Outdoor/Single Commercials | Peanut Butter Sandwich |
| | | Outdoor/Single Commercials | Graham Cracker |
| | | Print Campaign (Bus Shelters)-Silver | Brownies, Gingerbread Man, Chocolate Chip Cookies |
| | Bus Shelter | Posters/Campaign | Brownies, Gingerbread Man, Chocolate Cookie |
| | Print | Bus Shelter | Brownies |
| | | Outdoor Poster | Graham Cracker |
| | Broadcast | TV/Single Commericals | Couple |
| | | TV/Single Commericals | Aaron Burr (:60) |
| Design and Art Direction, 1994 Annual | Broadcast | TV Campaign | Kid Vendors, Couple, Aaron Burr |
| Cannes Advertising Festival | Broadcast | Single | Aaron Burr |
| Communication Arts, Advertising Annual | Outdoor | Outdoor/Single Commercials | Cupcakes |
| | | Outdoor/Single Commercials | Peanut Butter Sandwich |
| | | Outdoor/Single Commercials | Graham Cracker |
| | Bus Shelter | Posters/Campaign | Brownies, Gingerbread Man, Chocolate Cookies |
| Clio Awards | Broadcast | Broadcast | Aaron Burr |
| | | Broadcast | Baby/Cat |
| 1995 | | | |
| Award | Medium | Category | Commercial/Ad |
| San Francisco Show | Broadcast | Beverage | Heaven |
| | | Beverage | Vending Machine |
| | | Beverage | Insomniac |
| | | Beverage | Diner |
| | Broadcast | Consumer Products/Campaign | Heaven, Diner, Vending Machine |
| | Out of Home | Outdoor Campaign | Peanut Butter Sandwich, Cupcakes, Raisin |
| | | Mass Transit-Shelter | Wheaties |
| | | Mass Transit-Shelter | Cupcakes |
| | · | Mass Transit-Shelter | Cookies |
| | | Mass Transit-Shelter | Coffee |
| | | Mass Transit-Shelter Campaign | Wheaties, Raisin, Cupcakes |
| | | Poster-30 Sheet | Peanut Butter Sandwich |
| | | Poster-30 Sheet | Raisin |
| | Radio | Regional/National | The Will |
| | | Regional/National | Leprechaun |
| | | Regional/National | Counseling |

| | Radio | Regional/National Campaign | The Will, Leprechaun, Counseling |
|---|---|---|---|
| Communication Arts Advertising Annual | Broadcast | Single | Vending Machine |
| | | Single | Full Body Cast |
| | | Single | Interrogation |
| | | Single | Trix |
| | Outdoor | Single | Kittens |
| National ADDY Awards | Outdoor | Poster, Paints or Extensions | Peanut Butter Sandwich |
| | | Mass Transit | Cupcakes (vertical) |
| | | Outdoor Campaign | Peanut Butter Sandwich, Cupcakes, Raisin |
| | Broadcast | Food & Beverages | Heaven |
| | | Consumer Products | Heaven, Diner, Vending Machine |
| Clio Awards Show | Transit & Kiosks | Beverages/Consumer Products | Raisin, Coffee, Wheaties, Cupcakes, Cookies |
| | Posters | Beverages/Consumer Products | Animal Crackers, Cupcakes, Peanut Butter Sandwich |
| | Bulletins | Beverages/Consumer Products | Peanut Butter Sandwich |
| | Print | Single-Silver | Peanut Butter Sandwich |
| Advertising Age's The Best Awards | Broadcast | National | Heaven (:60) |
| | | Grocery Products | Heaven (:60) |
| | Outdoor | Best-Out-of-Home | Cupcakes |
| AMA EFFIE Awards | TV/Outdoor/Radio/Point-of-Purchase | Beverage/Non-Carbonated | 1994 Campaign |
| Design and Art Direction, 1995 Annual | Broadcast | Single | Diner |
| One Show | Outdoor | Single-Silver | Cupcakes |
| **1996** | | | |
| Award | Medium | Category | Commercial/Ad |
| One Show | Outdoor | Campaign-Silver | Oreos, Kittens, Kids |
| Clio Awards Show | Broadcast | Single | Airplane |
| | | Single | Birthday Party |
| | | Single | Oreo Kane |
| | | Single | Refrigerator Love |
| | | Single | Bus |
| | | Campaign | Airplane, Birthday Party, Isolation |
| | Radio | Single | Drive Thru |
| | | Single | Emergency |
| | | Single | Good Kids |
| | | Single | Intro |
| | | Campaign | Compound, Drive Thru, Emergency |
| | | Campaign | Into, Dreams, Good Kids |
| | Print | Campaign-Certificate | Oreo Cookie, Kittens, Kids |
| David Ogilvy Research Award | | Planning (Gold) | |
| Adweek's Best Spots of 1996 | Broadcast | Single | Oreo Kane |
| Communication Arts Advertising Annual 1996 | Broadcast | Single | Isolation (:60) |
| **1997** | | | |
| Award | Medium | Category | Commercial/Ad |

| The 1997 San Francisco Show | Outdoor | Special Award | Next Exit |
|---|---|---|---|
| | Broadcast | Best Campaign | Refrigerator Love, Oreo Kane, Isolation |
| | Radio | Campaign | Dreams, Intro, Drive Thru |
| | Broadcast | Individual | Airplane, Birthday Party |
| | Broadcast | Campaign | Airplane, Birthday Party |
| 1997 One Show | Broadcast | Campaign | Airplane, Birthday Party, Isolation |
| | | Single | Refrigerator Love |
| | | Single | Isolation (:60) |
| | Radio | Campaign | Intro, Dreams, Good Kids |
| Andy's Award Winners | Broadcast | Campaign | Airplane, Refrigerator Love, Oreo Kane |
| | | Single | Refrigerator Love |
| D&AD Awards | Broadcast | Single | Refrigerator Love |
| Mercury Awards | Radio | Single | Emergency |
| | | Single | Drive Thru |
| | | Single | Compound |
| | | Single | Intro |
| Adweek's Best Spots of 1997 | Broadcast | Single | Ballad |
| Cannes Advertising Festival | Broadcast | Single | Isolation |
| | | Single | Airplane |
| Communication Art | Outdoor | Single | Girl Scouts |
| **1998** | | | |
| Award | Medium | Category | Commercial/Ad |
| 1998 One Show | Print | Single | Snap, Crackle & Pop |
| | | Single | Girl Scouts |
| | | Single | Cookie Monster |
| | | Single | Beaters w/ Chocolate Frosting |
| | | Campaign | Snap, Crackle & Pop, Girl Scouts, Cookie Monster |
| | Outdoor | Single-Gold | Rice Krispies |
| International Andy Awards | Broadcast | Television | Ballad, Drysville Café, Patrol Cars |
| | Broadcast | | Lunchroom |
| Clios | Billboard | Single-Certificate | Cereal Bowl |
| | | Single-Certificate | Lost Kitty |
| | | Single-Certificate | Girl Scouts |
| | | Single-Certificate | Cookie Monster |
| | | Single Bronze | Beaters |
| One Show Print Finalist | Outdoor | (Gold) | Rice Krispies |
| | | | Girl Scouts |
| | | (Silver) | Cookie Monster |
| | | | Beaters |
| | | | Girl Scout 3-D Bus |
| | | | Shelter |
| **1999** | | | |
| Award | Medium | Category | Commercial/Ad |
| 1999 National ADDY Awards | Broadcast | Single Commercial-Citation of Excellence | Paws |
| Cannes | Broadcast | Finalist | Paws |
| SF Show | Outdoor | Gold | Pancakes |
| **2000** | | | |
| Award | Medium | Category | Commercial/Ad |

| SF Show | Broadcast | Finalist | Peanut Butter Dog |
|---|---|---|---|
| The One Show | Broadcast | Finalist | Bones |
| ANDY's | Broadcast | Finalist | Bones |
| Communication Art | Bus Shelter | | "Hershey's" |
| Obie Award | Outdoor | | "Hershey's" |
| **2001** | | | |
| Award | Medium | Category | Commercial/Ad |
| ADDY's | Broadcast | | Ben |
| SF Show | Broadcast | Gold | Ben |
| | | Silver | Taunt the Monkey |
| | | Silver | Everywhere |
| | | Silver | Ben/Everywhere/Taunt the Monkey |
| SF Show | Outdoor | OOH Campaign-Merit Winner | Chocolate Face-Sprinkles, Chocolate Face-Sprinkles with hand, Chocolate Face-Jelly Doughnut |
| | Outdoor | Single | Chocolate Face-Sprinkles |
| | Outdoor | Single | Chocolate Face-Sprinkles with hand |
| | Outdoor | Single | Chocolate Face-Jelly Doughnut |
| **2002** | | | |
| Award | Medium | Category | Commercial/Ad |
| Art Directors Club New York | Broadcast | Distinctive Merit | Bottle |
| Adweek's Best Spots of 2001 | Broadcast | | Ben |
| **2003** | | | |
| Award | Medium | Category | Commercial/Ad |
| Adweek's Best Spots of 2004 | Broadcast | February | X-Ray |
| One Show | Broadcast | Bronze Pencil | Birthday |
| Clio | Broadcast | Finalist | Birthday |
| Cannes | Broadcast | Gold Lion | Birthday |
| **2004** | | | |
| Award | Medium | Category | Commercial/Ad |
| Adweek's Best Spots of 2004 | Broadcast | | Russian Family |
| Adweek's Best Spots of the Month | Broadcast | June | Thirsty |
| | Broadcast | August | Russian Family |
| ANDY Awards | Broadcast | Silver | Birthday |
| CLIOS | Broadcast | Shortlist | X-Ray |
| **2005** | | | |
| Award | Medium | Category | Commercial/Ad |
| ANDY Awards | Broadcast | Silver | Russian Family |
| Art Director's Club | Broadcast | Silver | Russian Family |
| Clio Award | Broadcast | Silver | Russian Family |
| Communication Arts | Broadcast | Television Commercials | Russian Family :60 |
| Kelly Awards | Print | Finalist | Bones |
| **2006** | | | |
| Award | Medium | Category | Commercial/Ad |
| Cannes | Broadcast | Shortlist | Milk to the Rescue |
| | | Shortlist | Tabloid |
| | | Shortlist | Batting Practice |

|  |  | Shortlist | Manager |
|---|---|---|---|
|  |  | Shortlist | Never Poured |
|  |  | Shortlist | Episode 2: Farmer |
|  |  | Shortlist | Episode 5: Homecoming |
| Cannes Gold | Interactive | Fast Moving Consumer Goods-Gold Lion | Brittlelactica-PlanetInNeed.com |
|  |  | Interactive Campaigns-Gold Lion | PlanetInNeed.com, CowAbduction.com |
| AAAA | Planning | Shortlist | Performance Enhancement |
| London International Advertising Awards | Interactive | Interactive Media website winner (Beverages) | PlanetInNeed.com |
|  |  | Online Campaign Winner | Aliens Campaign |
| MSN Interactive Award | Interactive | Gold in Consumer Products Category | Planet In Need Banner |

## 2007

| Award | Medium | Category | Commercial/Ad |
|---|---|---|---|
| Effie | Broadcast | Gold | Planet In Need |
|  |  | Grand Effie Nominee | Planet In Need |
| Cannes | Interactive | Gold | GetTheGlass.com |
| Art Director's Club Silver | Interactive | Silver | Milk, Interactive Aliens" Campaign, online branded content" |
|  |  | Gold Hybrid | "Milk Aliens" |
| Future Marketing Awards | Interactive | Winner | Best Internet Campaign |
|  | Interactive | Winner | Best Interactve Project |
| Mediaweek's Media Plan of the Year | OOH | Best use of outdoor | Bus Shelters |
| Flashforward Conference | Flash | Experience | Get the Glass |
| London International Advertising Awards | Digital Media | Beverages - Gold | Get the Glass |
|  |  | Online games - Gold | Get the Glass |
| How Design Magazine Awards | Graphic Design | Best in Show | Get the Glass |

## 2008

| Award | Medium | Category | Commercial/Ad |
|---|---|---|---|
| FWA | Interactive | Site of the Year 2007 | Get the Glass |
|  | Interactive | Site of the Day April 2008 | White Gold |
|  | Interactive | Site of the Day May 2008 | gotmilk.com |
| People's Choice Award | Interactive | Favorite Website Award | Get the Glass |
| Art Director's Club New York | Interactive | Gold | Get the Glass |
|  | Broadcast | Silver | Get the Glass (Integrated) |
|  | Broadcast | Distinctive Merit | Get the Glass |
| Design and Art Direction awards, London | Animation and motion graphics | Black Pencil | Get the Glass |
|  | Microsites | Nomination | Get the Glass |
| Clios |  | Gold | Get the Glass |
|  |  | Silver | Get the Glass |
| How Design Magazine Awards | Interactive Design | Best of Show | Get the Glass |

## 2009

| Award | Medium | Category | Commercial/Ad |
|---|---|---|---|
| Effie | Media | Media Idea | White Gold |
| Festival of Media | Media | Best Youth Campaign | White Gold |
| Clio | Broadcast | Hall of Fame | Aaron Burr |
| Creative Media Awards | Media | Communications Channel Plan | White Gold |
| Festival of Media | Media | | |
| FITC Interactive Design & Technology Awards | Interactive | Winner - Flash Animation | White Gold |
| Kellys | Print | Finalist | White Gold |
| Mediaweek's Media Plan of the Year | Media | Best campaign Under $10M | White Gold |
| New York Festivals Awards | Website | Gold | got milk? Site |
| | Website | Bronze | White Gold Site |
| | Interactive | Bronze | White Gold Internactive Campaign |
| One Show | Website | Gold | got milk? Site |
| | Interactive | Silver | White Gold Internactive Campaign |

## 2010

| Award | Medium | Category | Commercial/Ad |
|---|---|---|---|
| One Show Entertainment | Music/Original Song | Bronze | Battle for Milkquarious Rock Opera |

## 2011

| Award | Medium | Category | Commercial/Ad |
|---|---|---|---|
| Favorite Website Awards | Website | Site of the Day- Dec 22, 2011 | |

## 2012

| Award | Medium | Category | Commercial/Ad |
|---|---|---|---|
| SF ADDY Awards | Broadcast | Silver | History |
| | Broadcast | Silver | Board |

## 2013

| Award | Medium | Category | Commercial/Ad |
|---|---|---|---|
| WEBBYS | Interactive | Honoree | The Science of Imitation Milk |
| D&AD's | Interactive | Finalist | The Science of Imitation Milk |

## 2014

| Award | Medium | Category | Commercial/Ad |
|---|---|---|---|
| One Show Interactive | Integrated Branding | Merit Award | Bedtime Drink |
| SF ADDY Awards | Radio | Gold | Seeds of Doubt |
| | Integrated Campaign | Gold | Sweet Dreams |
| | Radio | Silver | Sweet Dreams |
| Regional ADDY Awards | Integrated Campaign | Gold | Sweet Dreams |
| | Radio | Silver | Sweet Dreams |
| National ADDY Awards | Integrated Campaign | Silver | Sweet Dreams |
| | Radio | Gold | Seeds of Doubt |
| Radio Mercury | Radio | Finalist | Seeds of Doubt |

# EXHIBIT F

### got milk?® LICENSE AGREEMENT

This License Agreement ("Agreement") is effective as of the 1st day of July, 2009 (the "Effective Date") and is entered into by and between The California Milk Processor Board, an instrumentality existing under the laws of the State of California and the regulations promulgated by the California Department of Food and Agriculture ("CDFA"), having its principal place of business at 101 S. El Camino Real, Suite 202, San Clemente, CA 92672 ("CMPB"), and San Francisco Chocolate Factory ("LICENSEE"), a business located at 286 Twelfth Street, San Francisco CA 94103.

### RECITALS

A.  CMPB owns and uses the federally-registered service mark and trademark **got milk?** (Reg. Nos. 1,903,870; 2,689,741; and 3,730,703) (the "Mark") in connection with its services, activities, mandate and authority;

B.  LICENSEE provides chocolate products;

C.  LICENSEE desires to use the Mark on chocolates, cocoa mix, and chocolate products; and

D.  CMPB is willing to permit such use of the Mark under the terms and conditions set forth in this Agreement.

### NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1.    **Definitions.**

    a.    <u>Products</u>: chocolates, cocoa mix, and chocolate products.

    b.    <u>Territory</u>: worldwide.

    c.    <u>Term</u>:  From July 1, 2009 to June 30, 2010.

    d.    <u>Royalty</u> (in U.S. dollars):  6% (six percent) of the aggregate invoice price collected for LICENSEE's sales of the Products bearing the Mark less all taxes, credits, refunds, and returns.

2. GRANT OF LICENSE.

    2.1    GRANT OF LICENSE.    CMPB hereby grants to LICENSEE a non-exclusive, nontransferable, license to create, distribute and sell Products bearing the Mark within the

got milk?® LICENSE AGREEMENT

MR / LICENSEE _____ / CMPB

Territory during the Term.  LICENSEE may only use the Mark as a collective whole and shall not separately use any element or elements of the Mark.

2.2   RESERVATION OF RIGHTS.  CMPB hereby reserves any and all rights not expressly and explicitly granted in this Agreement, including CMPB's right to authorize or license use of the Mark or any other mark, phrase or names containing **"got milk?"** to any third party for use in connection with any other goods and services.  Without limiting the rights reserved in the preceding sentence, CMPB hereby reserves any and all rights to use, authorize use or license use of the Mark or any other marks, phrases or names containing **"got milk?"** worldwide in any language.  No right is provided to use any other CMPB trademark, service mark, Internet domain name, or trade name.

2.3 QUALITY STANDARDS.  LICENSEE acknowledges the high standards of quality and excellence established by CMPB with respect to the Mark.  LICENSEE agrees that the Products, and its use of the Mark in connection with the Products, shall be of such quality, style and appearance so as to maintain such high standards and to reflect well upon CMPB.  The Products shall comply with the standards, provisions and specifications of all applicable federal, state and local laws and regulations.

2.4 APPROVAL.  LICENSEE shall not sell or distribute Products bearing the Mark until CMPB has received and approved samples thereof.  Such approval shall be subject to CMPB's sole discretion but shall not be unreasonably withheld.  LICENSEE shall provide CMPB such further samples of the Products as CMPB may request from time to time.

3.  PAYMENT OF ROYALTY. LICENSEE shall pay CMPB the Royalty specified in 1(d) as follows:

     a.    <u>Royalty Payments</u>: Within ten (10) days after the end of each calendar quarter, LICENSEE shall pay to CMPB the Royalty attributable to LICENSEE's sales during such calendar quarter ("Royalty Payment").  LICENSEE's obligations to pay royalties hereunder shall survive termination of this Agreement.

For the rights granted to LICENSEE herein, LICENSEE shall pay CMPB the Royalty Payments exclusive of any applicable taxes.  LICENSEE shall be responsible for all applicable national, state and local taxes, value added or sales taxes, exchange, interest, banking, collection and other charges and levies and assessments pertaining to payments other than U.S. taxes based on CMPB's net income.  If LICENSEE is required by law to make any deduction or to withhold from any sum payable to CMPB by LICENSEE hereunder, (i) LICENSEE shall effect such deduction or withholding, remit such amounts to the appropriate taxing authorities and promptly furnish CMPB with tax receipts evidencing the payments of such amounts, and (ii) the sum payable by LICENSEE upon which the deduction or withholding is based shall be increased to the extent necessary to ensure that, after such deduction or withholding, CMPB receives and

retains, free from liability for such deduction or withholding, a net amount equal to the amount CMPB would have received and retained in the absence of such required deduction or withholding.

4.   STATEMENTS.   LICENSEE shall furnish CMPB, together with each Royalty Payment, complete statements fully describing gross sales, number description and actual selling price of all Products bearing the Mark sold or distributed by LICENSEE during the preceding quarter. Receipt or acceptance by CMPB of any statements furnished pursuant to this Agreement or any sums paid hereunder shall not preclude CMPB from questioning the correctness thereof at any time, and any inconsistencies or mistakes therein shall be immediately rectified and the appropriate payments made by LICENSEE.

5.   BOOKS AND RECORDS; RIGHT TO AUDIT AND INSPECT.   LICENSEE shall maintain and make available to CMPB, CDFA, and the State of California, or their agents or representatives, for inspection, copying and audit, at reasonable times and during regular business hours, books and records of all information relevant to the performance of this Agreement.   LICENSEE's obligations under this Section 5 shall continue for three (3) years after LICENSEE's final payment under this Agreement.

6.   OWNERSHIP OF MARK.

   6.1 CMPB OWNERSHIP.   LICENSEE hereby acknowledges the validity of, and CMPB's ownership of, the federally registered Mark, and any U.S. Patent and Trademark Office applications and/or registrations thereto, agrees that it will do nothing inconsistent with such ownership and agrees that all use of the Mark by LICENSEE shall inure to the benefit of CMPB. LICENSEE agrees that nothing in this Agreement shall give LICENSEE any right, title or interest in the Mark other than the right to use the Mark in accordance with this Agreement. LICENSEE agrees not to register or attempt to register the Mark as a trademark, service mark, Internet domain name, trade name, or any similar mark or name, with any domestic or foreign governmental or quasi-governmental authority which would be likely to cause confusion with the Mark.   LICENSEE may not register or use the Mark or an abbreviation of the Mark as part of an Internet domain name.

7.   USE OF THE MARK; PROTECTION OF THE MARK.

   7.1   PROPER USE.   LICENSEE agrees that all use of the Mark shall only occur in conjunction with lettering and/or signage displayed solely on LICENSEE's Products and shall be in strict compliance with the terms of this Agreement.   LICENSEE may use the Mark as set forth in Section 2.1.   LICENSEE shall submit to CMPB a specific description of the way in which LICENSEE intends to use the Mark, for CMPB's approval, at least twenty (20) business days before LICENSEE actually uses the Mark.   LICENSEE agrees not to modify the Mark. LICENSEE agrees not to use any other trademark or service mark in combination with the Mark other than as described in Section 2.1.   The Mark shall always be used in the English language. At CMPB's request, LICENSEE agrees that it will print the symbol denoting mark registration,

3 of 9

got milk?® LICENSE AGREEMENT

MRC / LICENSEE _____ CMPB

"®", on all Products and/or advertising or packaging thereof. At CMPB's request, LICENSEE shall also include the statement "'got milk?' is a registered trademark and servicemark of the California Milk Processor Board" on all Products and/or advertising or packaging thereof. The provisions of this paragraph shall survive the expiration or termination of this Agreement. LICENSEE has no right to sublicense, transfer or assign the use of the Mark or use the Mark for any other purpose other than the purpose described herein. LICENSEE may not use the Mark in connection with, or for the benefit of, any third party's products or services. LICENSEE further agrees not to use the Mark in a manner that is or could be deemed by CMPB, in its reasonable judgment, to be obscene, in poor taste, and/or in a manner that directly, explicitly or maliciously disparages CMPB, CDFA or their activities.

7.2   MONITORING BY CMPB.   LICENSEE acknowledges that CMPB has no further obligations under this Agreement other than the right to periodically monitor LICENSEE's use of the Mark on lettering and/or signage displayed solely on LICENSEE's Products. If CMPB determines that LICENSEE is using the Mark improperly, CMPB shall notify LICENSEE, and LICENSEE shall remedy the improper use within two (2) business days following receipt of such notice from CMPB. Use of the Mark in any manner inconsistent with this Agreement shall constitute material breach of this Agreement. If such material breach has not been cured within two (2) business days following receipt of notice from CMPB, this Agreement shall be terminated.

7.3   PROTECTION.   LICENSEE agrees to cooperate with CMPB in protecting, enforcing and defending CMPB's rights in the Mark. LICENSEE agrees to notify CMPB of any infringements, imitations, claims or other problems with respect to the Mark which may arise or otherwise come to LICENSEE's attention. CMPB shall have the sole right, but not the obligation, to take any action on account of any such infringement, imitation, claim or problem. LICENSEE agrees not to institute any suit nor take any other action on account of such infringements, imitations, claims or problems without the prior express written consent of CMPB.

8.   CONFIDENTIAL INFORMATION AND DISCLOSURE.   Unless required by law, and except to assert its rights hereunder or for disclosures to its own employees on a "need to know" basis, LICENSEE agrees not to disclose the terms of this Agreement or matters relating thereto without the prior written consent of CMPB, which consent shall not be unreasonably withheld.

9.   INDEMNIFICATION

9.1   INDEMNIFICATION BY LICENSEE.   LICENSEE shall indemnify and hold harmless CMPB, CDFA, the State of California, and each of their officers, agents, and employees (the "Indemnified Parties") from any and all liabilities, damages, claims, suits, judgments, costs and expense (including reasonable attorneys' fees), directly or indirectly incurred, as a result of: (a) the actions of LICENSEE relating to this Agreement and the actions contemplated herein; (b) the breach of any of the provisions of this Agreement by LICENSEE; (c) any claims or allegations by third parties or government agencies arising out of or in connection with any alleged breach

4 of 9

got milk?® LICENSE AGREEMENT
_MRL_ LICENSEE _____ CMPB

of the provisions of this Agreement by LICENSEE; (d) any claims by third parties based upon contract resulting directly from any activity contemplated by this Agreement; (e) any claims by third parties based upon any representations or warranties arising out of or in connection with the respective products or services, representations or art work of LICENSEE, or upon alleged patent, trademark or copyright infringement or unfair competition in connection with the respective products or services, representations or art work of LICENSEE; (f) acts or omissions of any firm employed by LICENSEE to perform any portion of the duties or obligations contained herein; and (g) any claims for products liability, contractual liability or personal injury arising out of LICENSEE'S manufacture, sale or distribution of any Products. LICENSEE shall promptly notify the Indemnified Parties thereof in writing, and LICENSEE shall assume and direct the defense thereof. The foregoing obligations are conditioned on the Indemnified Parties: (i) giving LICENSEE written notice of the relevant claim, (ii) cooperating with LICENSEE, at the Indemnifying Party's expense, in the defense of such claim, and (iii) giving LICENSEE the right to control the defense and settlement of any such claim, except that LICENSEE shall not enter into any settlement that affects the Indemnified Parties' rights or interest without the Indemnified Parties' prior written approval. The Indemnified Parties shall have the right to participate in the defense at their own respective expense

9.2   INDEMNIFICATION BY CMPB. CMPB agrees to indemnify LICENSEE and to hold LICENSEE harmless from any and all loss, damages, claims or causes of action, including reasonable legal fees and expenses that may be incurred by LICENSEE, arising out of a third party claim insofar as it is based on an allegation that the license furnished to LICENSEE in this Agreement infringes any copyright or registered trademark in existence on the Effective Date, but only if LICENSEE does all of the following: (a) notifies CMPB of that action in writing within five (5) business days; (b) gives CMPB the right to control and direct the defense and settlement of that action; (c) makes no compromise, settlement, or admission of liability; and (d) provides reasonable assistance and cooperates in the defense of that action at CMPB's expense. CMPB will have no responsibility for the settlement of any claim, suit or proceeding made by LICENSEE without Licensor's prior written approval.

9.3   SURVIVAL. The obligations established by Paragraphs 9.1 and 9.2, above, shall survive termination of this Agreement.

10. TERMINATION

10.1   TERM AND TERMINATION. The rights granted to LICENSEE by this Agreement shall begin on the Effective Date and continue for the Term, unless terminated earlier as provided in Section 7.2 or this Section 10.1. CMPB shall have the right to terminate this Agreement immediately, by delivering written notice of such termination to LICENSEE, upon the occurrence of one or more of the following: (a) any material breach by LICENSEE of its obligations under this Agreement, or (b) use of the Mark by LICENSEE in a manner which is directly, explicitly or maliciously disparaging of CMPB, CDFA or their activities and services.

got milk?® LICENSE AGREEMENT

_____ / LICENSEE _____ / CMPB

10.2 EFFECT OF TERMINATION.  Upon termination of this Agreement for any reason: (i) the license granted herein shall immediately cease and all rights granted to LICENSEE hereunder shall revert to CMPB; (ii) except as permitted below, LICENSEE shall immediately cease and refrain from further use of the Mark; and (iii) unless termination is due to LICENSEE's breach, LICENSEE, for a period not to exceed six (6) months thereafter, may dispose of Products bearing the Mark which are on hand, or are in the process of manufacture, as of the effective date of termination, subject to the Royalty provisions set forth above.  All sums accrued or owed to CMPB through the termination date shall be due and payable within thirty (30) days of the termination date.  All sums accrued or owed to CMPB thereafter shall be paid within thirty (30) days of the end of the calendar quarter in which such sums accrued.

## 11. GENERAL

11.1 GOVERNING LAW.  This Agreement shall be subject to and governed in all respects by the statutes and laws of the State of California without regard to the conflicts of laws principles thereof.  The Superior Court of Sacramento County and/or the United States District Court for the Eastern District of California shall have exclusive jurisdiction and venue over all controversies in connection herewith, and each party hereby consents to such exclusive and personal jurisdiction and venue.

11.2 ENTIRE AGREEMENT.  This Agreement constitutes the entire Agreement and understanding between CMPB and LICENSEE and integrates all prior discussions between them related to its subject matter.  No modification of any of the terms of this Agreement shall be valid unless in writing and signed by an authorized representative of each party.

11.3 ASSIGNMENT.  LICENSEE may not assign any of its rights or delegate any of its duties under this Agreement, or otherwise transfer this Agreement (by merger, operation of law or otherwise) without the prior written consent of CMPB.  Any attempted assignment, delegation or transfer in derogation hereof shall be null and void.

[The remainder of this page is intentionally left blank.]

6 of 9

got milk?® LICENSE AGREEMENT

LICENSEE       CMPB

11.4 NOTICES. All notices required or permitted hereunder shall be given in writing addressed to the respective parties as set forth below and shall either be (a) personally delivered; (b) transmitted by postage prepaid certified mail, return receipt requested; or (c) transmitted by nationally-recognized private express courier, and shall be deemed to have been given on the date of receipt if delivered personally, or two (2) days after deposit in mail or express courier. Either party may change its address for purposes hereof by written notice to the other in accordance with the provisions of this Subsection. The addresses for the parties are as follows:

TO THE
CALIFORNIA
MILK PROCESSOR
BOARD:

W. Stephen James
Executive Director
The California Milk Processor Board
101 S. El Camino Real, Suite 202
San Clemente CA 92672

TO LICENSEE:

Michael Litton
President
San Francisco Chocolate Factory
286 Twelfth Street
San Francisco CA 94103

11.5 WAIVER. Any waiver, either expressed or implied, by either party of any default by the other in the observance and performance of any of the conditions, covenants of duties set forth herein shall not constitute or be construed as a waiver of any subsequent or other default.

11.6 HEADINGS. The headings to the Sections and Subsections of this Agreement are included merely for convenience of reference and shall not affect the meaning of the language included therein.

11.7 INDEPENDENT CONTRACTORS. The parties acknowledge and agree that they are dealing with each other hereunder as independent contractors. Nothing contained in the Agreement shall be interpreted as constituting either party the joint venture or partner of the other party or as conferring upon either party the power of authority to bind the other party in any transaction with third parties.

11.8 SURVIVAL. The provisions of Section 2.2 (Reservation of Rights), 6 (Ownership of Mark), 7.3 (Protection), 8 (Confidential Information and Disclosure), 10.2 (Effect of Termination) and 11 (General) will survive any termination of this Agreement.

11.9 EQUITABLE RELIEF. LICENSEE recognizes and acknowledges that a breach by LICENSEE of this Agreement will cause CMPB irreparable damage which cannot be readily

got milk?® LICENSE AGREEMENT

LICENSEE        CMPB

remedied in monetary damages in an action at law, and may, in addition thereto, constitute an infringement of the Mark. In the event of any default or breach by LICENSEE that could result in irreparable harm to CMPB or cause some loss or dilution of CMPB's goodwill, reputation, or rights in the Mark, CMPB shall be entitled to immediate injunctive relief to prevent such irreparable harm, loss, or dilution in addition to any other remedies available.

11.10 SEVERABILITY.  Except as otherwise set forth in this Agreement, the provisions of this Agreement are severable, and if any one or more such provisions shall be determined to be invalid, illegal or unenforceable, in whole or in part, the validity, legality and enforceability of any of the remaining provisions or portions thereof shall not in any way be affected thereby and shall nevertheless be binding between the parties hereto.  Any such invalid, illegal or unenforceable provision or portion thereof shall be changed and interpreted so as to best accomplish the objectives of such provision or portion thereof within the limits of applicable law.

11.11 ATTORNEYS' FEES.  In the event of any action, suit, or proceeding brought by either party to enforce the terms of this Agreement, the prevailing party shall be entitled to receive its costs, expert witness fees, and reasonable attorneys' fees and expenses, including costs and fees on appeal.

11.12  COMPLIANCE WITH FAIR EMPLOYMENT AND HOUSING ACT.  During the performance of this Agreement, LICENSEE and its permitted subcontractors shall not unlawfully discriminate against any employee or applicant for employment because of race, religion, color, national origin, ancestry, physical handicap, medical condition, marital status, age (over 40), or sex.  LICENSEE shall insure that the evaluation and treatment of its employees and applicants for employment are free of such discrimination.  LICENSEE shall comply with the provisions of the Fair Employment and Housing Act (Government Code § 12900 et seq. and the applicable regulations promulgated thereunder (California Code of Regulations, Title 2, § 7285.0 et seq.).  The applicable regulations of the Fair Employment and Housing Commission implementing the Government Code § 12990 set forth in Chapter 5 of Part 2.8 of Division 3 of Title 2 of the California Code of Regulations are incorporated into this contract by reference and made a part hereof as if set forth in full.  LICENSEE shall give written notice of its obligations under this Section 11.12 to labor organizations with which it has a collective bargaining agreement.

11.13  CONTEMPT OF COURT.  By signing this Agreement, LICENSEE swears under penalty of perjury that no final unappealable finding of contempt of court by a Federal court has been issued against LICENSEE within the immediately preceding two-year period because of LICENSEE's failure to comply with an order of a Federal court which orders LICENSEE to comply with an order of the National Labor Relations Board.

11.14  INSURANCE. LICENSEE shall obtain and maintain, during the Term, a Commercial General Product Liability insurance policy (the "LICENSEE's Insurance Policy") issued by an insurer with an "A" rating, with a combined single limit of liability of not less than One Million Dollars ($1,000,000.00) per occurrence and per person.  LICENSEE's Insurance Policy shall

8 of 9

got milk?® LICENSE AGREEMENT

_MRL_ / LICENSEE _SSJ_ / CMPB

name CMPB, CDFA, the State of California, and each of their officers, agents, and employees as insureds, as their interests may appear. LICENSEE's Insurance Policy shall insure against any and all liability for personal injuries or property damage, arising out of, resulting from, or incident to the negligent acts or omissions of LICENSEE and any products liability arising from the manufacture, sale and distribution of any Product(s). In addition, LICENSEE shall obtain and maintain, throughout the Term, the necessary workers' compensation insurance or qualified self-insurance to cover its employees.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

**"CMPB":**

The California Milk Processor Board

By: ______________________

W. STEPHEN JAMES
Executive Director

Date: 02-10-10

**"LICENSEE":**

San Francisco Chocolate Factory

By: ______________________

MICHAEL LITTON
President

Date:

# EXHIBIT G

8/28/2014
Product Melville Got Milk? Mini Marshmallow Hot Chocolate Spoons

Case 2:14-cv-02022-KJM-CKD Document 1 Filed 08/30/14 Page 59 of 63

Featured Designer: *The WORLD of RALPH LAUREN*

Homepage > Home > Gourmet Gifts And Treats > Candy Nuts And Dried Fruit > Melville Got Milk Mini Marshmallow Hot Chocolate Spoons



**View Larger**

## Melville Got Milk? Mini Marshmallow Hot Chocolate Spoons

Price:

Perfect for cocoa lovers young and old, these spoons contain everything you need to make a steaming cup of hot chocolate.

Be the first to write a Review .

This product is currently out of stock.

**Continue shopping**

g+1

**Tell a Friend**      **Print**

Simply stir one mini marshmallow hot chocolate making spoon into a cup of hot water or warm milk. The chocolate dissolves to make a rich and delicious hot chocolate drink.

- Includes: 4 individually wrapped spoons within a plastic package
- Can be used with warm milk or hot water
- Makes a great gift
- Made in the USA

Credit Account      Find A Store      Gift Cards      Gift Registry      Today's Ad      This Week In Stores      Careers      About Bon-Ton      Product Recalls

$(document).ready(function() { var objMobileLink = $("#mobileview_link"); pageURL = document.URL; if(pageURL.indexOf("http://m.") != -1 || pageURL.indexOf("https://m.") != -1){ objMobileLink.hide(); } else{ var mobileViewURL = "http://m.bonton.com"; if (typeof divisionDomain !== 'undefined') { if(divisionDomain != null && objMobileLink){ mobileViewURL = "http://m."+region+divisionDomain+".com"; objMobileLink.attr("href",mobileViewURL); } } } });
View Mobile Site
© 2014 Bon-Ton Stores, Inc.

# EXHIBIT H

3:36 PM
07/18/14

## Melville Candy Corp
## Vendor QuickReport
### All Transactions

| Type | Date | Num | Memo | Account | Clr | Split | Debit | Credit |
|------|------|-----|------|---------|-----|-------|-------|--------|
| Bridge Branch Chocolate | | | | | | | | |
| Check | 1/5/2013 | 7654 | Got Milk License Bon Ton order | Rockland Trust - Ch... | X | Supplies | | 7,500.00 |

# EXHIBIT I



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Aug 28 03:20:53 EDT 2014*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At: _____ OR Jump to record: _____   **Record 1 out of 4**

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# GOT MILK CHOCOLATE?

| | |
|---|---|
| **Word Mark** | GOT MILK CHOCOLATE? |
| **Goods and Services** | (ABANDONED) IC 030. US 046. G & S: Chocolate |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 86078193 |
| **Filing Date** | September 30, 2013 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) Bridge Brands CORPORATION CALIFORNIA 286 Twelfth St. San Francisco CALIFORNIA 94103 |
| **Attorney of Record** | Ernest G. Bootsma |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Abandonment Date** | November 4, 2013 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |